**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **10-00837-hb**
Adversary Proceeding Number: **10-80051-hb**

## SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 18 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/23/2010**



US Bankruptcy Judge
District of South Carolina

Entered: 11/23/2010

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Israel Romero and Reina M Chavez-Romero,<br><br>Debtor(s). | C/A No. 10-00837-HB<br><br>Adv. Pro. No. 10-80051-HB<br><br>Chapter 13 |
| Israel Romero<br>Reina M Chavez-Romero,<br><br>Plaintiff(s),<br><br>v.<br><br>Coventry Credit Union,<br><br>Defendant(s). | **ORDER GRANTING**<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Coventry Credit Union pursuant to Fed R. Civ. P. 56(c), made applicable by Fed. Bankr. R. 7056. This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

In their Complaint, Plaintiffs Israel Romero and Reina M. Chavez-Romero (together hereinafter "Plaintiffs") allege that Defendant Coventry Credit Union violated 11 U.S.C. § 362[1] by continually sending Plaintiffs requests for payment and delinquency notices on their loan after they filed bankruptcy. Plaintiffs request that the Court find the Defendant in willful violation of the automatic stay and (1) enjoin Defendant from post-petition collection of the debt; (2) enforce the automatic stay; (3) discharge the debt; (4) award actual damages; (5) award emotional distress damages; and award punitive damages.

---

[1] Further references to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) stall be by section number only.

Defendant asserts it is entitled to summary judgment because Plaintiffs have not suffered any damages from Defendant's actions. Furthermore, Defendant contends that its contact with Plaintiffs while the bankruptcy case was pending was not a violation of § 362 pursuant to modifications of the automatic stay under the Debtors' proposed Chapter 13 Plan that allowed secured creditors to contact the Debtors. Defendant also contends that its contact with Plaintiffs did not constitute a willful violation warranting a monetary award to Plaintiffs.

After conducting a hearing on the matter and reviewing the Motion and supporting documents, the Court finds that Defendant is entitled to judgment as a matter of law. The following facts are available from the record:

**Findings of Fact**

1. Plaintiffs filed, *pro se*, a voluntary chapter 13 bankruptcy petition on February 8, 2010.

2. Plaintiffs listed Defendant Coventry Credit Union on Schedule D as a creditor holding a secured claim. Schedule D states that Plaintiffs' account ends in 7314 and Defendant's address is 2006 Nooseneck Hill Rd., P.O. Box 4004, Coventry, RI 02816-0495. The Court caused notices of the case to be issued to Coventry immediately after filing based on this information.

3. Plaintiffs obtained a pre-petition loan from Coventry Credit Union. Plaintiffs' 2006 Kia Optima serves as collateral for loan.

4. During the chapter 13 case, Plaintiffs filed four adversary proceedings against various creditors, including Coventry Credit Union.

2

5. The instant adversary proceeding commenced on April 12, 2010, when Plaintiffs filed a Complaint against Defendant. Plaintiff's Complaint alleges that despite the fact that Plaintiffs had filed their bankruptcy case on February 8, 2010, Defendant sent Plaintiffs notices that indicated the balance of their arrearage and applicable late charges. The Complaint alleges that stay violations include late notices mailed by Defendant to Plaintiff(s) in February and March of 2010. The Complaint does not mention any other contact between the Defendant and Plaintiffs.

6. In their Complaint, Plaintiffs seek compensation for damages for emotional distress, alleging that they have been under extreme emotional distress "watching day and night for a towing truck to come and take the car which is the collateral for this loan." (Docket # 1 at p. 1). In addition, Plaintiffs seek to enjoin Defendant from post-petition collection of the debt, to reinstate the automatic stay, and an award of punitive damages. Defendants allege that they suffered emotional distress from fear of their car being seized due to the arrearages on the Coventry Credit Union loan and should be awarded actual damages of $20,000 and punitive damages in the amount of $2,000,000.

7. Defendant's Answer to the Complaint includes general denials and also states that the notices of bankruptcy Defendant received made it difficult to identify the debtor. Defendant claims that there was insufficient or inconsistent information on the notices as a result of a change of address by the debtors and incomplete social security number information. Defendant asserts that any post-petition notices sent to Plaintiff(s) were inadvertent and denies any willful violation of the automatic stay.

8. On June 3, 2010, Plaintiffs filed a Motion for Judgment on the Pleadings (Plaintiff's Motion) in this adversary case, stating that there are no genuine issues of

3

material fact for trial. (Docket # 6). Plaintiffs' Motion stated that Defendant's Answer admits that it sent the collection notices to Plaintiffs after notice of the bankruptcy was sent to Defendant. Plaintiffs' Motion again asserted that Plaintiffs continue to be under extreme emotional distress. At the time Plaintiffs' Motion was filed, discovery had not yet begun in this matter. Plaintiffs' Motion attached copies of some of the post-petition correspondence, including copies of the February 28, 2010 and March 30, 2010 notices mailed to Plaintiff(s) by Defendant that set forth Plaintiffs' loan information, including balance and late charges. Also attached were notices dated March 10, 2010 and March 15, 2010, which appeared to be standard computer generated late notices. The notices did not mention repossession or include any threatening language, and they gave phone numbers for Plaintiff(s) to call if they could not make payments.

9.     Plaintiffs' chapter 13 case was dismissed on July 1, 2010 for failure to file a confirmable chapter 13 plan, failure to file amended schedules, and failure to provide certain other documents previously requested by the Trustee. *In re Romero*, C/A No. 10-00837-hb, slip op. (Bankr. D.S.C. July 1, 2010).

10.    This proceeding continued after dismissal of the bankruptcy case. Defendant served Plaintiffs with discovery requests in this adversary proceeding on July 26, 2010.

11.    Before a hearing was held on Plaintiffs' Motion, Plaintiffs also filed an Objection to Discovery Requests posed by Defendant, arguing that the requests were premature because no Rule 26(f) conference had been held before service thereof. (Docket # 12). Plaintiffs' Motion was denied following a hearing held on August 12, 2010, after a review of the record did not indicate that entry of judgment in favor of Plaintiffs was warranted at that time. (Docket #16). The Court thereafter entered a scheduling order to

4

begin the discovery process. The Scheduling Order provided that discovery should be completed by October 14, 2010. *Id.*

12. Plaintiffs thereafter responded to the discovery posed by Defendant. Question 3 of Defendant's Interrogatories asks Plaintiffs to:

> Give a computation of each category of damages claimed by the Plaintiffs and identify the documents or other evidentiary material, which such computation is based, including materials bearing on the nature and the extent of the injuries suffered.

(Docket # 19 at p. 2).

13. Plaintiffs' response to Question 3 of Defendant's Interrogatories states that:

> Plaintiff[s] are relying on *In re Stewart*, No. 08-15643-JNF, 2010 WL 1427378 (Bankr. D. Mass. April 9, 2010), and this case should be decided under the authority of said case law.

*Id.*

14. Plaintiffs did not supplement this answer with any supporting documents or evidentiary material. Nor did Plaintiffs identify any materials bearing on the nature, amount and extent of their injuries.

15. Defendant's Interrogatories also questioned Plaintiffs about possible witnesses. Plaintiffs identified two employees of Coventry Credit by name as witnesses to the facts of this matter and stated that the witnesses "will be questioned regarding six collection letters, and about a dozen collection phone calls. Also will give information about the repossession letter dated July 19, 2010 . . . and about the instructions to the repossession specialist Gerald Lappia." (Docket # 19). Plaintiffs' responses also identified Mr. Lappia as a possible witness, identified the collection letters sent on or before March 15, 2010, discussed above, as relevant documents, and stated that all documents identified are attached to the discovery responses. The responses also identified a "collection letter" dated

5

March 30, 2010, a "collection letter" dated April 23, 2010, and a "repossession letter" dated July 19, 2010—after the bankruptcy case was dismissed. *Id.*

16. Coventry Credit Union filed its Motion for Summary Judgment on October 20, 2010, after discovery ended, and mailed notice thereof to Plaintiffs. *Id.* The Motion requests summary judgment on all causes of action and asserts that Plaintiffs have shown no evidence of damages. Defendant's Motion included a copy of Plaintiffs' responses to interrogatories in support, minus attachments, and quoted the Plaintiffs' answer regarding damages. The Motion is further supported by two consistent affidavits. *Id.*

17. The affidavits of Coventry Credit Union employees, filed in support of the Motion, state that they have personal knowledge of the matters raised in the adversary proceeding. These are the same employees that were named by Plaintiffs as witnesses to the facts of this matter. The employees state that Coventry did not make any telephone calls to or receive any from the Plaintiff(s) during the period of February 8, 2010 to July 1, 2010, as mentioned in pleadings. Affiants further state that a review of the records of the company was performed for this account and that there is one incoming call from Reina Chavez-Romero to Coventry on Saturday, April 17, 2010, but no message was left. The affidavits state that the phone record review evidences no telephone contact between Plaintiffs and Coventry while the bankruptcy case was pending.[2] The affidavits confirm that after the bankruptcy case was filed Defendant sent as many as four computer generated late notices to Plaintiff(s). The affidavits indicate that on March 23, 2010, Defendant received a personal note from Plaintiff Reina M. Chaves-Romero stating that she and her husband are currently

---

[2] The affidavit reflects that there was contact after the bankruptcy case was dismissed and in fact repossession was ordered. Plaintiffs' responses to Defendant's discovery requests also indicate that repossession occurred post-dismissal and that Plaintiffs have complaints about how it was handled. However, this complaint sets forth causes of action for violation of 11 U.S.C. § 362 only, which stay terminated when the case was dismissed.

6

involved in a chapter 13 case and the loan account is affected by that case. Thereafter, affiants state that they marked the file to hold off on further collection activity due to the bankruptcy. The affidavits indicate that, prior to that time, Coventry had difficulty identifying the debtor in the bankruptcy notices because of address inconsistencies and an incomplete social security number. The affiants state that the other documents identified by Plaintiffs in their discovery responses as the offending documents were monthly statements sent to all account holders.

18.     The Court scheduled a hearing on the Motion for November 18, 2010, and set a deadline therein of November 11, 2010 for the filing of responses. Plaintiffs' pleading titled "Opposition to Defendant's Motion for Summary Judgment" was filed on November 1, 2010. (Docket # 24). This document is signed by Plaintiffs but gives no indication that it is signed under oath. Plaintiffs point out therein that they are appearing *pro se* in this matter and call the Court's attention to the fact that the Court caused notice of the bankruptcy case to be generated to Defendant prior to the time Defendant mailed the notices and letters to Plaintiff(s). The pleading states that:

> [i]t is clear that the Defendant violated the automatic stay because Defendant knew first thing that the Plaintiff(s) were acting PRO SE . . . The Bankruptcy Court has recently ruled that sophisticated creditors try to harass a debtor and to abuse the process when the debtor is not represented by an attorney but acting pro se. In re Stewart, No. 08-15643-JNF, 2010 WL 1427378 (Bankr. D. Mass. April 9, 2010) . . .

*Id.* at 2. Plaintiffs' Objection argues that the letters are collection letters and attaches a copy of two such letters. The pleading further states that:

> [a]t trial of this matter the Plaintiff(s) will testify to facts like, the distress the Plaintiff(s) experienced because of the prospect of a towing truck coming to pick the car up, until it really happened. The debtors missed sleep because of the situation. The Debtors communicated the apprehension to Defendant's attorney. Defendant's attorney in response made fun of the

7

> Debtors in several occasions especially in a conference were [sic] the Chapter 13 Trustee was present. For the Bankruptcy Court, that apprehension added to the lost [sic] of work time and money on gas and parking by Plaintiff(s), added to the collection letters is [sic] sufficient to demonstrate a loss. And the Plaintiff(s) will demonstrate it at the trial . . .

*Id.* at 3. Plaintiffs also argue that the affidavits supporting Defendant's Motion are "from two perjured Defendant's officers." *Id.* at 4.

19. The two late notices attached to the Objection dated March 10, 2010 and March 15, 2010, appear to be standard computer generated late notices. *Id.* at Exhibit 2. They do not mention repossession or include any threatening language and give phone numbers for Plaintiff(s) to call if they cannot make payments.

### Standard of Review

Pursuant to Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, summary judgment "should be rendered if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial." *McCoy v. Lewis*, C/A No. 4:09-2269-PMD, 2010 WL 3169431, 3 (D.S.C. Aug. 9, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party." *Sain v. HSBC Mortg. Services, Inc.*, C/A No. 4:08-2856-TLW-SVH, 2010 WL 2902741, 2 (D.S.C. June 10, 2010). The court must determine whether genuine issues of material fact

8

exist for claims and affirmative defenses asserted by the parties. *See Spence v. Spence*, 368 S.C. 106, 123, 628 S.E.2d 869, 878 (2006) ("... an affirmative defense usually must be pled in an answer and either resolved in later motions such as summary judgment or directed verdict or at trial.") (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citations omitted). Pursuant to Rule 56(e):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—**set out specific facts showing a genuine issue for trial**. If opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (emphasis added).

### Discussion and Conclusions of Law

Upon the filing of a bankruptcy petition, the automatic stay of § 362 "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy case]." 11 U.S.C. § 362(a)(6). "The automatic stay is broad in scope and its operation is automatic upon the filing of the petition. Once the stay is in place, 'it protects all property of the estate regardless of whether or not notice has been given of the pendency of the case.'" *Weatherford v. Timmark*, 413 B.R. 273, 283 (Bankr. D.S.C. 2009) (citations omitted).

9

Section 362 of the Bankruptcy Code provides protections for debtors whose creditors violate the automatic stay. Section 362(k) states that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "The burden is on the party seeking damages for the violation of the stay to prove the following elements: '(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtors suffered damages.'" *In re Sammon*, 259 B.R. 672, 679-80 (Bankr. D.S.C. 2000) (citations omitted). Plaintiffs "must prove the violation by clear and convincing evidence." *Bolen v. Mercedes Benz, Inc. (In re Bolen)*, 295 B.R. 803, 807 (Bankr. D.S.C. 2002).

In order to demonstrate a willful violation of the automatic stay, Plaintiffs must show that Defendant knew of their pending bankruptcy petition and intentionally attempted to continue collection procedures in spite of it. *Glover v. Saunders Inc. of Hilton Head, et al. (In re Glover)*, C/A No. 03-04149-JW, Adv. Pro. No. 05-80098-JW, slip op. (Bankr. D.S.C. May 31, 2006) (citing *Georgetown Steel Co. LLC v. Capital City Ins. Co., Inc. (In re Georgetown Steel Co., LLC)*, 318 B.R. 313, 334 (Bankr. D.S.C. 2004). "Knowledge of the bankruptcy 'is the legal equivalent of knowledge of the stay' and when a creditor acts intentionally with knowledge of the bankruptcy then the violations becomes willful, regardless of whether the creditor had a specific intent to violate the stay." *Weatherford*, 413 B.R. at 284 (citations omitted).

The term "willful," as used in § 362(k), has been interpreted as follows:

A "willful violation" does not require specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the

10

> defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Id.* at 285 (citing *In re Johnson*, C/A No. 97-06698-W, 2001 WL 1806979, at *5, slip op. (Bankr. D.S.C. July 28, 1998)).

Defendant asserts that it was unaware of Plaintiffs' chapter 13 case until it received a personal note from Plaintiff Reina M. Chaves-Romero on March 23, 2010. However, Plaintiffs argue that Defendant was given sufficient notice of the chapter 13 case when they filed their petition and when Defendant was served notice of the Creditors' Meeting. Plaintiffs claim that their names and the last four digits of their social security numbers were sufficient for Defendant to determine which customer and account entered bankruptcy.

Furthermore, Defendant contends that it did not willfully violate the automatic stay because it did not knowingly or intentionally send the notifications to Plaintiffs in violation thereof. Instead, Defendant asserts that the notifications were generated and sent automatically by a computerized service utilized by Defendant. Despite the fact that the mailings were sent automatically by a computer program, Defendant took no actions to prevent or discontinue the sending of these notices. Therefore, the sending of the notices, even if done automatically by a computer program, constitutes a violation of the automatic stay. *See In re Messer*, C/A No. 03-04429-JW, slip op. (Bankr. D.S.C. Dec. 19, 2005) (holding that even though collection notices were not created by creditor, creditor violated automatic stay because the notices were sent on behalf of creditor and creditor took no actions to prevent or discontinue remittance of the notices to Debtors).

Defendant also argues that its contact with Plaintiffs while the chapter 13 case was pending was allowed pursuant to Plaintiffs' chapter 13 Plan. The proposed plan, filed on February 8, 2010, included the following provision:

> STANDING STAY MODIFICATION: The automatic stay provided in 11 U.S.C. § 362(a) is modified in Chapter 13 cases as follows: Affected secured creditors may contact the debtor about the status of insurance coverage on property used as collateral. If there are direct payments to creditors, affected secured creditors may contact the debtor in writing about any payment in default; and shall send to the debtor statements, payment coupons or other correspondence that the creditor sends to its non-debtor customers. Such actions do not constitute violations of 11 U.S.C. § 362(a).

*In re Romero*, C/A No. 10-00837-hb (Docket # 4). Regardless of whether this provision applied to Defendant, it is inapplicable because the Plan was never confirmed. Therefore, the automatic stay was never modified by the Plan and Defendant was never given the authority to contact Plaintiffs.

Assuming, *arguendo,* that all other elements of a claim under § 362(k) are present, the record before the Court at this time does not include any facts from which it could find that Plaintiffs suffered any compensable actual damages or that the conduct of Defendant rises to a level necessary to prove that punitive damages are warranted under existing case law. Therefore, Defendant is entitled to entry of judgment in its favor as a matter of law.

Section 362(k) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "For purposes of Section 362(k), actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *In re Rawles*, C/A No. 08-00555, 2009 WL 2924005, at *2, slip op. (Bankr. D.Md. June 18, 2009) (citing *Heghmann v. Indorf (In re Heghmann),* 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004)).

"Courts have recognized that emotional distress damages are allowable actual damages under § 362." *Weatherford*, 419 B.R. at 28-89. However, Defendant asserts that Plaintiffs may not recover from a violation of the automatic stay under § 362(k) based solely on emotional distress. To support this argument, Defendant cites *Aiello v. Providian Fin. Corp.*, 239 F.3d 876 (7th Cir. 2001), which held that recovery for emotional distress is not allowed absent a showing of financial injury. *Id.* at 880. Defendant also cites *In re Dawson*, 367 F.3d 1174 (9th Cir. 2004) to support this argument. Although the court in *Dawson* held that debtors may not recover damages for emotional distress when a creditor violates the automatic stay, this holding was reconsidered by the Ninth Circuit and overruled. *See Dawson v. Washington Mut. Bank.*, 390 F.3d 1139 (9th Cir. 2004). Upon revisiting the issue, the Ninth Circuit held that actual damages under § 362(k) include damages for emotional distress. *Id.* at 1148. The Court reasoned that "[b]ecause Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as 'actual damages.'" *Id.*

Although actual damages for emotional distress are recoverable from a willful violation of the automatic stay, "[a]n award of punitive damages, on the other hand, usually requires more than a mere willful violation of the automatic stay." *In re Rawles*, 2009 WL 2924005, at *2 (citations omitted). However, a uniform standard for what is required of the creditor in order to award punitive damages has not been established by the courts.

> One group uses "maliciousness or bad faith" as a guide . . . Another group of cases uses "arrogant defiance of federal law" as the touchstone . . . Other courts have used egregious, vindictive or intentional misconduct as the standard . . . Still other courts have used a multi-factor approach and considered the following four factors: (1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motive of the defendant; and (4) any provocation by the debtor.

*Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 289 (S.D. W. Va. 2007) (internal citations omitted). "An award of punitive damages is within the discretion of the Bankruptcy Court and is a fact specific determination." *In re Stewart*, C/A No. 08-15643-JNF, 2010 WL 1427378, at *6, slip op. (Bankr. D. Mass. April 9, 2010).

Plaintiffs assert that they are entitled to an award of actual and punitive damages. Rather than responding to Defendant's discovery requests with details of their damages, or providing evidence that supports a claim of damages to defeat summary judgment, Plaintiffs offer a citation to *In re Stewart*, 2010 WL 1427378. The court in *Stewart* considered documentary and testimonial evidence under oath produced by a debtor, appearing *pro se* in a chapter 13 bankruptcy case, at an evidentiary hearing on debtor's Motion for Contempt for Violation of the Automatic Stay. The Court found that the *pro se* Debtor sufficiently established that he had suffered damages because:

> [a]t the hearing, he provided unrebutted testimony under oath that he has suffered actual damages in the form of lost time from work and emotional distress. In his Memorandum, which was also sworn and unopposed, he attested that he has suffered mental anguish, depression and sleepless nights as a result of the actions of [Defendants] . . . Although the Debtor did not quantify any lost business revenue or fully elaborate on the extent of his actual injuries, the Court accepts the Debtor's averments as true because they **were made under oath and were uncontested.**

*Id.* (emphasis added).

Applicable rules allow a party to file a Motion for Summary Judgment and in response to such a motion, Plaintiffs cannot merely refer to their allegations alone and state that they will offer proof at trial, as Plaintiffs have done here. Unlike *Stewart*, Plaintiffs did not provide any documentary evidence, written affidavits or testimony tying any measurable damages to any stay violation by Defendant. Despite timely discovery requests asking for details of damages, Plaintiffs have either been unable to or have chosen not to provide any

14

information in an appropriate form from which this Court could find that they have been damaged by Defendant's conduct. Likewise when given another chance to do so in response to this Motion, they responded only with legal citations and vague allegations. (*See* Docket # 24).

The Ninth Circuit has held that "a claim for emotional distress damages is available if the individual provides *clear evidence* to establish that **significant** harm occurred as a result of the violation." *Dawson*, 390 F.3d at 1148-49 (emphasis added). The Ninth Circuit did not follow the Seventh Circuit in holding that pecuniary loss was required to claim emotional distress damages. *Id.* at 1149. However, the Ninth Circuit did set forth the following standard for emotional distress damages:

> to be entitled to damages for emotional distress under § 362(k), and individual must (1) suffer significant harm, (2) **clearly establish the significant harm**, and (3) **demonstrate a causal connection between that significant harm and the violation of the automatic stay** (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process) . . . Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm.

*Id.* (emphasis added).

Mere allegations unsupported by any detail or evidence in the record, cannot serve as a basis for awarding emotional distress damages. Absent a showing of some portion of the record indicating that there is a genuine issue of fact as to whether Plaintiffs suffered significant emotional distress as a result of Defendant's stay violations, no such damages may be awarded.

A slippery slope results if the Court dispenses with the need for **evidence** and instead scours the record for mere statements and allegations made in pleadings or unsworn arguments to support the claim for damages. Heading down that slope, the Court performed

15

such a search and found Plaintiffs' statements that they have "missed work" and incurred expenses for "gas and parking." However, these allegations do not include any detail from which the Court could tie them to any unlawful conduct by Defendant during the time the bankruptcy case was pending and the stay was in effect. Even if the Court stretches the concept of viewing the "evidence" in the light most favorable to the non-moving party to consider these allegations, they, when combined with evidence of discovery responses that omit a listing of damages, are insufficient to defeat a Motion for Summary Judgment. The Court's records indicate that, in addition to their Chapter 13 case, Plaintiffs filed a total of four adversary proceedings in which numerous hearings have been held that do not directly involve this lawsuit. There is no evidence in this evidentiary record tying the vague allegations about missed work, gas and parking expenses to the notices sent by Defendants or to this particular adversary proceeding. The Court could not find that Plaintiffs have shown any injury distinct from the anxiety and pressures inherent in the bankruptcy process or that the allegations indicate more than fleeting or trivial anxiety or distress—neither of which suffices to support an award; instead, an individual must suffer significant emotional harm. *See Dawson*, 390 F.3d at 1149.

To be clear, the Court is not weighing the evidence, but instead finds after a thorough search that there is no proper evidence of damages before the Court to support the cause of action alleged.

In addition, Plaintiffs cannot rely merely on the fact that they received a few routine notices in the mail within the months after the case was filed to support a punitive damages claim. Directing the Court to case law only[3] to somehow show that Defendant acted

---

[3] *See* Docket # 19 at p. 2 (Plaintiffs' response to interrogatories stating that they are relying on *In re Stewart* for an award of punitive damages).

16

maliciously, in bad faith, or in any other manner as defined in the case law simply because they sent the letters in question to these Debtors is not sufficient evidence to defeat a properly supported motion for summary judgment.

The court in *In re Stewart*, 2010 WL 1427378, found that the Defendants acted egregiously and awarded Debtor punitive damages because Debtor "produced eight collection letters from [Defendant's] agents as well as evidence of sixteen collection calls made by them for a total of twenty-four postpetition communications . . . [and because of Debtor's] repeated attempts to advise [Defendants] of his bankruptcy filing." *Id.* at *7. This evidence of extensive post-petition contact went hand-in-hand with the Debtor's evidence of actual damages resulting from that unlawful conduct.

Plaintiffs in this matter have not made a similar record. Even viewing the evidence before the Court in the light most favorable to Plaintiffs, there is no evidence that the Defendant's conduct was egregious, malicious, or in bad faith. Plaintiffs cannot rely merely on allegations and arguments to defeat a motion for summary judgment which Defendant has fully supported by evidence in rebuttal to Plaintiffs' allegations. Therefore, Plaintiffs have not shown that they are entitled to punitive damages and summary judgment is granted to Defendant on this issue.

Summary judgment is also granted with regard to the causes of action requesting enforcement of the automatic stay and requesting that this Court enjoin Defendant from post-petition collection practices. The Plaintiffs' underlying chapter 13 case was dismissed on July 1, 2010. Therefore, these matters are now moot because the stay ended when the bankruptcy case was dismissed.

**AND IT IS SO ORDERED.**